1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ZOOVE CORPORATION, | Case No.: 10-CV-06131 EJD (PSG) |
| Plaintiff, | **ORDER DENYING MOTION TO TRANSFER; GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| v. | |
| STARPOUND CORPORATION, | (Re: Docket No. 15) |
| Defendant. | |

Pending before the court is Defendant StarPound Corporation's motion to dismiss the First Amended Complaint or to transfer the action to the Northern District of Georgia. ECF No. 15. On July 3, 2012, the court took the motion under submission without oral argument. ECF No. 36; see Civil L.R. 7-1(b). Upon review of the papers submitted, Defendant's motion to dismiss is granted in part and denied in part, and its motion to transfer is denied.

## I.    BACKGROUND

StarPound is a Georgia corporation with its principal place of business in Atlanta. First Am. Compl. ("FAC") ¶ 3. Between October 23, 2000, and October 23, 2001, StarPound filed two provisional patent applications (nos. 60/242,511 and 60/265,760) and one utility patent application (no. 10/037,378) (collectively, the "Priority Applications"). See id. ¶¶ 1, 9; see also infra

1

1   Attachment A (diagram of StarPound's relevant patent portfolio). In 2005, StarPound filed a

2   second utility patent application (no. 11/320,932) as a continuation of the '7,378 application. In

3   2006, the '7,378 application matured into U.S. Patent No. 6,990,472 ("the '472 patent"); in 2011,

4   the '932 application matured into U.S. Patent No. 7,865,447 ("the '447 patent") (collectively, the

5   "Related Patents"). FAC ¶ 9. The Related Patents cover inventions in mobile marketing. Id. These

6   patents and applications (and others described below) are StarPound's primary assets. Brager Decl.

7   ¶ 4 ECF No. 15 attachment 1.

8        In August 2003, Response Metrics, Inc., a Delaware corporation operating out of Rhode

9   Island, initiated negotiations with StarPound regarding the possibility of licensing the technology

10  described in StarPound's pending patent application. Brager Decl. ¶ 5. Response Metrics and

11  StarPound executed a letter of intent in December 2003 and an exclusive option agreement in 2004.

12  Id. Response Metrics transferred its business assets to Zoove Corporation later in 2004.[1] Id.

13  StarPound agreed to allow Zoove to step into the shoes of Response Metrics with respect to their

14  agreements. Id. Zoove was initially based in Rhode Island, but moved to Palo Alto, California, in

15  October 2005. Jemison Decl. ¶ 2, ECF No. 27.

16       In late 2005, Zoove's counsel continued license negotiations with StarPound's president.

17  Manso Decl. ¶ 5, ECF No. 28. Both Zoove and its counsel were located in Palo Alto throughout

18  these negotiations, all of which took place by e-mail and telephone. Id. On March 27, 2006, the

19  parties entered into a license agreement (the "Agreement") granting Zoove the exclusive rights

20  under any patent claiming priority to the Priority Applications. FAC ¶ 12. (At the time, only the

21  '472 patent had issued.) The initial term of the Agreement was five years, with options to extend

22  beyond the original term. Id. Because Zoove chose not to exercise its option to extend, the

23  Agreement expired on March 27, 2011. Id. StarPound's only business activity since 2006 has been

24  its relationship with Zoove. Brager Decl. ¶ 3.

25       On March 29, 2011, StarPound sued Zoove in the Northern District of Georgia for

26  infringement of the Related Patents and breach of the Agreement. N.D. Ga. Case No. 1:11-CV-

27  00989-SCJ ("the Georgia Action"); FAC ¶¶ 5, 13. StarPound dismissed its patent infringement

28  _____

[1] Before changing its name in March 2006, Zoove Corp. was called Teleractive, Inc. Jemison Decl. ¶ 2.

Case No.: 11-CV-06131 EJD (PSG)
ORDER GRANTING MOTION TO DISMISS IN PART; DENYING TRANSFER

United States District Court
For the Northern District of California

claims with prejudice and its breach of contract claim without prejudice on September 26, 2011. Id. ¶ 13.

Between January 2011 and January 2012, StarPound filed three more utility patent applications, each a new continuance in the chain that began with the '7,378 application in 2001. In dismissing the Georgia Action, StarPound expressed its belief that Zoove would infringe any patent that issued from at least the first of those three new applications. Id. ¶ 14. On December 6, 2011, that first application was granted as U.S. Patent No. 8,073,784 (the '784 patent).[2] Id. ¶¶ 14–15.

As soon as the '784 patent issued, StarPound's counsel sent an e-mail to Zoove's counsel which read,

> Enclosed is a copy of StarPound's newly granted patent 8,073,784. We believe that this patent is directly relevant to Zoove's current business model and will provide significant competitive advantages for Zoove as well as StarPound. Basically, in our view there is no way for anyone to compete directly with Zoove's current business model without utilizing the claimed invention. Based on the way we left things during our last conversation, we look forward to having a discussion from that basis. Please review the claim coverage and let us know your thoughts.

Frank Decl. Ex. B., ECF No. 26. That same day, Zoove filed this action, requesting a declaratory judgment of invalidity and noninfringement of the '784 patent. On February 22, 2012, Zoove amended its complaint to add claims for declaratory judgment of "unenforceability" and "unavailability of relevant patent coverage" not only with respect to the '784 patent but also as to any later-issued patents stemming from the Priority Applications. FAC ¶¶ 32–43. The amendment also added a request for a declaration that Zoove did not breach the Agreement. Id. ¶¶ 44–48.

On April 16, 2012, StarPound filed the present motion to dismiss the complaint or transfer the action to the Northern District of Georgia, arguing (1) that there is no controversy to support subject matter jurisdiction, (2) that this court cannot exercise personal jurisdiction over StarPound, and, alternatively, (3) that the action should be transferred to Georgia in the interests of fairness and convenience. Mot. Dismiss, ECF No. 15.

## II.   MOTION TO DISMISS

---

[2] The other two applications remain pending before the USPTO. In one of the applications, no. 13/299,695, the PTO has issued a Notice of Allowance, which indicates that review on the merits is complete and that a patent will issue following the payment of fees. See Manual of Patent Examining Procedure (8th ed. rev. 8) § 1303.

Case No.: 11-CV-06131 EJD (PSG)
ORDER GRANTING MOTION TO DISMISS IN PART; DENYING TRANSFER

United States District Court
For the Northern District of California

1    This court applies the law of the Federal Circuit rather than that of the Ninth Circuit

2    because the jurisdictional questions at issue here are "intimately involved with the substance of the

3    patent laws." Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995).

4         **A.    Subject Matter Jurisdiction**

5         The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its

6    jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may

7    declare the rights and other legal relations of any interested party seeking such declaration, whether

8    or not further relief is or could be sought." 28 U.S.C. § 2201(a). The phrase "case of actual

9    controversy" "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article

10   III." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126 (2007); Aetna Life Ins. Co. v.

11   Haworth, 300 U.S. 227, 240 (1937).

12        The Supreme Court has not articulated a bright-line rule for distinguishing those cases that

13   satisfy the actual controversy requirement from those that do not. Indeed, it has noted that "[t]he

14   difference between an abstract question and a 'controversy' contemplated by the Declaratory

15   Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to

16   fashion a precise test for determining in every case whether there is such a controversy." Maryland

17   Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941). Instead of fashioning a precise test, the

18   Supreme Court has required only that the dispute be "'definite and concrete, touching the legal

19   relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t]

20   of specific relief through a decree of a conclusive character, as distinguished from an opinion

21   advising what the law would be upon a hypothetical state of facts.'" MedImmune, 549 U.S. at 126

22   (quoting Aetna, 300 U.S. at 240-41). "Basically, the question in each case is whether the facts

23   alleged, under all the circumstances, show that there is a substantial controversy, between parties

24   having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

25   declaratory judgment." Md. Cas., 312 U.S. at 273.

26        Prior to the Supreme Court's decision in MedImmune, courts applied a two-part test to

27   determine whether there was an actual controversy in suits requesting a declaration of patent

28   noninfringement, invalidity, or unenforceability. See, e.g., EMC Corp. v. Norand Corp., 89 F.3d

4

807, 811 (Fed. Cir. 1996); Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha, 57 F.3d

1051, 1052 (Fed. Cir. 1995); Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736

(Fed. Cir. 1988). One prong of the test examined whether the declaratory judgment plaintiff

actually produced or was prepared to produce an allegedly infringing product. The other prong

looked to see whether conduct by the patentee had created in the declaratory judgment plaintiff a

reasonable apprehension that the patentee would file suit if the allegedly infringing activity

continued. Arrowhead, 846 F.2d at 736.

        In MedImmune, however, the Supreme Court abrogated the "reasonable apprehension of

suit" test, finding the Federal Circuit's test in conflict with Maryland Casualty and Aetna and in

tension with Cardinal Chemical Co. v. Morton International, Inc., 508 U.S. 83, 113 (1993).

MedImmune, 549 U.S. at 146 n.11; see also SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d

1372, 1380 (Fed. Cir. 2007) ("The Supreme Court's opinion in MedImmune represents a rejection

of our reasonable apprehension of suit test."); Teva Pharms. USA, Inc. v. Norvartis Pharms. Corp.,

482 F.3d 1330, 1339 (Fed. Cir. 2007). As a result, post-MedImmune decisions have made clear

that a declaratory judgment plaintiff does not need to establish a reasonable apprehension of a

lawsuit in order to establish that there is an actual controversy between the parties. SanDisk, 480

F.3d at 1380–81; Teva Pharms., 482 F.3d at 1339.

        "[D]eclaratory judgment jurisdiction generally will not arise merely on the basis that a party

learns of the existence of a patent owned by another or even perceives such a patent to pose a risk

of infringement, without some affirmative act by the patentee." SanDisk, 480 F.3d at 1381. If a

party "has actually been charged with infringement of the patent, there is, necessarily, a case or

controversy adequate to support jurisdiction." Cardinal Chem., 508 U.S. at 96. But a patentee

cannot avoid a declaratory judgment action altogether by simply drafting an infringement letter that

avoids magic words such as "litigation" or "infringement." Hewlett–Packard Co. v. Acceleron

LLC, 587 F.3d 1358, 1362 (Fed. Cir. 2009).

Case No.: 11-CV-06131 EJD (PSG)
ORDER GRANTING MOTION TO DISMISS IN PART; DENYING TRANSFER

United States District Court
For the Northern District of California

**1.      Declaratory Judgment of Noninfringement/Invalidity/Unenforceability of the '784 Patent**

StarPound argues that its e-mail was not an accusation of infringement, and that as a result Zoove cannot establish the existence of any justiciable controversy. Under Hewlett–Packard, StarPound cannot rest solely on the language of the letter; the fact that StarPound avoided explicitly alleging infringement of the '784 patent is not dispositive. Conduct that can be reasonably inferred as demonstrating intent to enforce a patent can create declaratory judgment jurisdiction, see Hewlett–Packard, 587 F.3d at 1363, so a look at the circumstances surrounding the e-mail is appropriate.

While the application that led to the '784 patent was still pending, StarPound expressed its belief that Zoove's products and services would infringe the application's claims as drafted.[3] FAC ¶ 14. The '784 patent issued without any further modification to the claims. The morning the patent issued, StarPound's attorney wrote to Zoove's attorney to invite license negotiations, stating that "[b]asically, in our view there is no way for anyone to compete directly with Zoove's current business model without utilizing the claimed invention." Frank Decl. Ex. A. The logical inference from that statement is that Zoove also infringes the patent: otherwise, a party could compete with Zoove by doing exactly what Zoove does. In the context of the statement StarPound made while the application was still pending, that inference is even stronger.

Taken altogether, these facts show that StarPound took the affirmative step of an implied assertion of its rights under the '784 patent. Therefore, this court finds that there is a basis for the exercise of jurisdiction in this case, arising from a definite and concrete dispute between Zoove and StarPound about whether Zoove infringes that patent.

After this case was filed, StarPound attempted to defuse the controversy by "clarif[ying]" that it "does not contend that Zoove is infringing the [']784 patent." Brager Decl. ¶ 22. However, even the genuine absence of any current intention to sue does not moot an actual controversy created by a patentee's actions or other statements.

---

[3] StarPound asserts that it "has not accused Zoove of infringing the [']784 patent," Brager Decl. ¶ 20. But it is silent about any communications or statements made while the patent was still an application despite being on notice that statements made during the pendency of the application formed a basis for Zoove's assertion of jurisdiction.

Case No.: 11-CV-06131 EJD (PSG)
ORDER GRANTING MOTION TO DISMISS IN PART; DENYING TRANSFER

1   In <u>SanDisk</u>, the patentee, STMicro, had engaged in a course of conduct that showed a

2   willingness to enforce its patent rights: it had made a studied and considered determination that

3   SanDisk infringed its patents, then approached and communicated that determination to SanDisk

4   during licensing negotiations. 480 F.3d at 1382. At the same time, STMicro represented that it had

5   "absolutely no plan whatsoever to sue SanDisk." <u>Id.</u> The court held that STMicro's statement did

6   not eliminate the justiciable controversy created by its actions. <u>Id.</u> at 1383.

7   Like STMicro, StarPound has exhibited its willingness to enforce its patent rights against

8   Zoove (it has sued once already on other patents) and has not provided any affirmation that it will

9   not sue Zoove for infringement upon the '784 patent. For the last six years, StarPound's entire

10  business has been the monetization of its patents, and Zoove is apparently its only target.

11  StarPound's stated intentions and beliefs do not extinguish the justiciable controversy created by its

12  prior actions and statements.

13         **2.**        **Declaratory Relief Regarding Pending Patent Applications**

14  StarPound contends that no case or controversy exists based on StarPound's pending patent

15  applications. This court agrees.

16  The Federal Circuit has clearly held that "at a threat is not sufficient to create a case or

17  controversy unless it is made with respect to a patent that has issued before a complaint is filed"

18  <u>GAF Building Materials Corp. v. Elk Corp. of Dallas</u>, 90 F.3d 479, 482 (Fed. Cir. 1996). It does

19  not matter that the patent will certainly soon issue; nor would it even matter if the patent had issued

20  at some time after filing but before StarPound's motion or this court's order. <u>Id.</u> This court lacks

21  jurisdiction over any claim in the FAC seeking declaratory relief with respect to the '695 or '668

22  applications because they were still pending at the time the complaint was filed. If a patent issues

23  on either of those applications, Zoove may move for leave to amend its complaint to add claims for

24  declaratory relief at that time.

25         **3.**        **Declaration of Non-breach of the License Agreement**

26  StarPound concedes—and the court agrees—that supplemental jurisdiction over the

27  contract declaratory judgment action is proper given the exercise of jurisdiction over the patent

28  claims. Reply at 5:16–21.

**B.     Personal Jurisdiction**

A plaintiff bears the burden of establishing the Court's personal jurisdiction over the defendant. See Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986). Service of a summons in a federal action establishes personal jurisdiction over a defendant who would be subject to jurisdiction of a court of general jurisdiction of the state in which the district court is located. Fed. R. Civ. P. 4(k)(1)(A). Since California state courts are permitted to exercise personal jurisdiction to the maximum extent permitted by the U.S. Constitution, Cal. Civ. Proc. Code § 410.10, the question in this case reduces to whether exercising personal jurisdiction over StarPound would violate Fourteenth Amendment due process protections.

In the seminal case on personal jurisdiction, International Shoe Co. v. Washington, 326 U.S. 310 (1945), the Supreme Court held that in order to subject a nonresident defendant to personal jurisdiction in a forum, due process requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." 326 U.S. at 316 (internal quotation omitted).

In Akro Corp. v. Luker, 45 F.3d 1541 (Fed. Cir. 1995), the Federal Circuit summarized the Supreme Court's jurisprudence by setting forth three requirements for the exercise of personal jurisdiction: (1) that the defendant "purposefully directed" its activities at residents of the forum; (2) that the claim "arises out of or relates to" the defendant's activities with the forum; and (3) that assertion of personal jurisdiction is "reasonable and fair." Id. at 1545. The first two conditions correspond with the "minimum contacts" mandate of International Shoe while the third condition embraces the "fair play and substantial justice" protection. Id. The plaintiff bears the burden of proof on the minimum contacts questions; if the plaintiff carries that burden, the onus is on the defendant to demonstrate the presence of other considerations that render the exercise of jurisdiction unreasonable. Akro, 45 F.3d at 1545–46.

**1.     "purposefully directed"**

StarPound argues that the governing precedent provides that neither the mere accusation of patent infringement nor the entering into a license with a California resident constitutes purposeful

Case No.: 11-CV-06131 EJD (PSG)
ORDER GRANTING MOTION TO DISMISS IN PART; DENYING TRANSFER

1    direction. Zoove notes that although StarPound is based in Georgia, its only business since 2006

2    has been its relationship with Zoove.

3         StarPound is correct in its contention that neither an infringement letter nor a one-off

4    license alone would be adequate to establish personal jurisdiction. Combined, however, the two

5    acts can be sufficient. In Inamed v. Kuzmak, the Federal Circuit held that an infringement letter,

6    without more, is insufficient to satisfy the requirements of due process when exercising jurisdiction

7    over an out-of-state patentee. 249 F.3d 1356, 1361 (Fed. Cir. 2001). The court went on to consider

8    whether there were "other activities" sufficient to meet the "minimum contacts" requirement of

9    International Shoe, and found that the letter taken together with former license agreements between

10   the two parties did establish purposeful direction. Inamed, 249 F.3d at 1362.

11        A defendant need not have been physically present in a forum to be subject to personal

12   jurisdiction there. The Supreme Court has "abandoned more formalistic tests that focused on a

13   defendant's 'presence' within a State in favor of a more flexible inquiry into whether a defendant's

14   contacts with the forum made it reasonable . . . to require it to defend the suit in that State." Quill

15   Corp. v. North Dakota, 504 U.S. 298, 307 (1992). In Quill, the Court found personal jurisdiction

16   proper even though the defendant's only contacts with the forum had been by telephone and mail.

17        StarPound and Zoove negotiated and executed the Agreement between late 2005 and March

18   2006; throughout the negotiations, Zoove was located in California. On December 6, 2011, the day

19   the '784 patent issued, StarPound sent Zoove an e-mail inviting negotiations for a license. The

20   combination of the December 6 e-mail with the negotiation and execution of the Agreement is

21   sufficient to satisfy the first factor in the three-part Akro test.

22                   **2.    "arises out of or relates to"**

23        "The central purpose of a declaratory action is often to clear the air of infringement

24   charges." Inamed, 249 F.3d at 1362. This action for a declaration of noninfringement of the '784

25   patent plainly "relates to" the letter implying infringement of the '784 patent. Likewise, the

26   negotiations that led to the Agreement relate to the action for a declaration of nonbreach of the

27   same Agreement.

28

**United States District Court**
For the Northern District of California

Case No.: 11-CV-06131 EJD (PSG)
ORDER GRANTING MOTION TO DISMISS IN PART; DENYING TRANSFER

### 3.    "reasonable and fair"

An evaluation of the reasonableness of exercising personal jurisdiction depends on several factors: (1) the burden on the defendant, (2) the interests of the forum State, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies. <u>Asahi Metal Indus. Co. v. Super. Ct. of Cal.</u>, 480 U.S. 102, 113 (1987). These considerations guide the analysis in the third factor of the <u>Akro</u> test.

StarPound complains that Zoove is "forum shopping" in an attempt to "financially pummel StarPound into submission through costly and unjustified litigation across the continent." Mot. at 16:3–8. While defending a suit in Georgia would be more convenient for StarPound, that does not defeat jurisdiction here. Zoove is not forum shopping; its headquarters are in this District, and California certainly has an interest in providing an effective redress for its residents. Since StarPound's only business over the last six years has been its relationship with Zoove, it is not unfair for StarPound to be haled into court here.

Finding each <u>Akro</u> requirement to be met, the court determines that the exercise of personal jurisdiction over StarPound is proper.

## III.    MOTION TO TRANSFER

A district court may transfer a civil action to another district court where venue would be proper "for the convenience of the parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). The burden of showing that a transfer is warranted is on the party requesting it. <u>Commodity Futures Trading Comm'n v. Savage</u>, 611 F.2d 270, 279 (9th Cir. 1979).

StarPound's request to transfer the action repeats its argument that the exercise of personal jurisdiction would be unfair: that litigating a patent action in California is expensive for a Georgia-based holding company. While it may be more expensive for StarPound to litigate in California, it would likewise be more expensive for Zoove to litigate in Georgia. Zoove is the plaintiff, and its choice of forum is entitled to some weight. No showing has been made on any of the many factors courts routinely consider when ruling on § 1404(a) motions, such as the ease of access to sources

Case No.: 11-CV-06131 EJD (PSG)
ORDER GRANTING MOTION TO DISMISS IN PART; DENYING TRANSFER

United States District Court
For the Northern District of California

1    of proof, or even the law that would apply to the construction of the Agreement. See <u>Jones v. GNC</u>
2    <u>Franchising, Inc.</u>, 211 F.3d 495, 498 (9th Cir. 2000).

3        The only evidence offered in support of transfer is an excerpt of the Agreement—its
4    "Jurisdiction and Venue" clause—by which the parties consented to venue in the U.S. District
5    Court for the Northern District of Georgia. The clause was not mandatory; neither party gave up
6    their right to sue elsewhere. That term was plainly included in the contract so that StarPound could
7    be sure it would not face from Zoove the very kind of motion it now brings. The parties could have
8    inserted a binding venue clause, but they chose not to.

9        Venue in the Northern District of California is proper, and StarPound has not met its burden
10   to show that a transfer would serve the interest of justice.

11

12                               **IV.    ORDER**

13       For good cause shown, IT IS HEREBY ORDERED that StarPound's motion to dismiss the
14   complaint is GRANTED with respect to all requested declaratory relief regarding the '695 and
15   '668 patent applications (and any other pending or as-yet-unfiled applications). StarPound's motion
16   to dismiss the complaint is DENIED in all other respects. StarPound's motion to transfer venue is
17   DENIED.

18

19   Dated: August 17, 2012
20                                               EDWARD J. DAVILA
                                                 United States District Judge
21

22

23

24

25

26

27

28

Case No.: 11-CV-06131 EJD (PSG)
ORDER GRANTING MOTION TO DISMISS IN PART; DENYING TRANSFER

*United States District Court*
*For the Northern District of California*

Attachment A
StarPound's Patent Portfolio



Case No.: 11-CV-06131 EJD (PSG)
ORDER GRANTING MOTION TO DISMISS IN PART; DENYING TRANSFER

United States District Court
For the Northern District of California